UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH STANLEY BROWN,                    :      CIVIL ACTION NO. 4:CV-11-0260
                                        :
            Plaintiff                   :      (Judge Nealon)
                                        :
      v.                                :
                                        :      **FILED**
MAJOR SUE HANNAH, et al.,               :      **SCRANTON**
                                        :
            Defendants                  :      FEB 0 6 2012

                         **MEMORANDUM**          Per_____
                                                      DEPUTY CLERK

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

      On February 2, 2011, Plaintiff, Keith Stanley Brown ("Brown"), an inmate confined in

the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed this civil

rights action pursuant to 42 U.S.C. § 1983.  The named Defendants are the following three (3)

SCI-Huntingdon employees: Warden Raymond Lawler, Hearing Examiner Charles Mitchell, and

Major Sue Hannah.  (Doc. 1, complaint).

      Plaintiff claims that after verbally complaining to his Unit Manager, Hannah, about lost

property, she instructed him to file a DC-135 form (request slip) regarding his allegations. Id., ¶

6.  Brown admits that he stated on said request form, "[w]hy do you woman take the responsibility

to hold these jobs and I feel as though most female staff in prison try to impress male officer yall

[sic] should not even be allow to work in mens prison because of the complex you woman carry."

Id., ¶ 7.  For writing the above statement, Brown was issued Misconduct No. B077246 for "using

abusive, obscene or inappropriate language to an employee." Id., ¶¶ 9, 11.

      Brown was afforded a misconduct hearing, after which the Hearing Examiner, Mitchell,

found him guilty and sanctioned him to sixty (60) days in disciplinary custody. Id.  Brown

appealed the Hearing Examiner's findings, and received three (3) levels of appellate review

pursuant to the Department's Misconduct Policy, DC-ADM 801.1. <u>Id</u>., ¶ 12.  He alleges that

Mitchell's findings were inappropriate because the charges are "false" and he was not allowed to

call witnesses or "confront and cross examine the accuser [Hannah]." <u>Id</u>., ¶ 11.  Brown also

alleges that the misconduct was issued in retaliation and as part of a conspiracy between the

Defendants. <u>Id</u>.

   For relief, Plaintiff seeks compensatory and punitive damages for the issuance of a false

misconduct, the denial of due process during his misconduct  hearing, the imposition of an

excessive sentence received in violation of the Eighth Amendment, retaliation, conspiracy and

denial of access to the courts. <u>Id</u>.

   Presently pending before the Court is the Corrections Defendants' motion to dismiss the

Plaintiff's complaint.  (Doc. 11).  The parties have fully briefed the issues and the motion is now

ripe for disposition.  For the reasons that follow, the Court will grant Defendants' motion to

dismiss.

## I.  <u>Motion to Dismiss</u>

   The Court in <u>Williams v. Hull</u>, 2009 WL 1586832, *2-*3 (W.D. Pa. 2009), set forth the

Motion to Dismiss standard of review, as annunciated by the Supreme Court in <u>Bell Atlantic</u>

<u>Corp. v. Twombly</u>, 550 U.S. 544, (2007), and as refined in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662

(2009), as follows:

> The issue is not whether the plaintiff will prevail at the end but only whether he
> should be entitled to offer evidence to support his claim. <u>Neitzke</u>; <u>Scheuer v.</u>
> <u>Rhodes</u>, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule
> 12(b)(6) if it does not allege "enough facts to state a claim to relief that is
> plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S.Ct. 1937, ----, 173 L.Ed.2d 868, ----, 2009 WL 1361536 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir.1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir.2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n. 3.

Williams, 2009 WL 1586832 at *2-*3.

In considering a motion to dismiss, a court generally should consider not only the allegations contained in the complaint itself but also the exhibits attached thereto, which the complaint incorporates pursuant to Federal Rule of Civil Procedure 10(c). Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (holding that in deciding a motion to dismiss, a court should consider only the allegations in the complaint, exhibits attached to the complaint, matters

3

of public record, and documents that form the basis of a claim); Pension Benefit Guaranty Corp.

v. White Consolidated Industries, Inc., 998 F.2d 1192 (3d Cir. 1993).

## II.    **Discussion**

### A.    **Due Process**

The filing of a false misconduct report does not violate an inmate's due process rights.

The general rule, as stated in Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), provides that

a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly

accused of conduct which may result in the deprivation of a protected liberty interest.

The Plaintiff, as all other prison inmates, has the right not to be deprived of a protected

liberty interest without due process of law."  Thus, where a prisoner is provided due process, no

constitutional violation results from his being falsely accused of a misconduct.

The Fourteenth Amendment of the United States Constitution provides in pertinent part:

"No State shall. . .deprive any person of life, liberty, or property, without due process of law. . . ."

The Supreme Court has mandated a two-part analysis of a procedural due process claim: (1)

"whether the asserted individual interests are encompassed within the . . . protection of 'life,

liberty or property[,]'" and (2) "if protected interests are implicated, we then must decide what

procedures constitute 'due process of law.'"  Ingraham v. Wright, 430 U.S. 651, 672 (1977).  If

there is no protected liberty or property interest, it is unnecessary to analyze what procedures were

followed when an alleged deprivation of an interest occurred.  In Wolff v. McDonnell, 418 U.S.

539, 563-73 (1974), where the plaintiffs were deprived of good time credits as a severe sanction

for serious misconduct, the Supreme Court held that such inmates had various procedural due

4

process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker.[1]

Thereafter, the Court in Hewitt v. Helms, 459 U.S. 460, 471 (1983), stated that a state law which "used language of an unmistakably mandatory character" creates a protected liberty interest. Following Hewitt many courts held that a state regulation can create a due process interest -- such as freedom from punitive segregation -- if the rule contains mandatory language such as "shall" or "will." E.g., Layton v. Beyer, 953 F.2d 839, 848-49 (3d Cir. 1992).

The Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), however, marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin, the Court was presented with the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to thirty (30) days in disciplinary segregation. Id. at 474-76. The Court first found that the approach adopted in Hewitt – described above -- was unwise and flawed. Id. at 481-84. The Court also rejected plaintiff Conner's argument that "any state action

---

1. In Wolff, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.
An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

taken for punitive reasons encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." Id. at 484. The Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of plaintiff Conner's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Sandin Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. The Court examined the nature of Conner's disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." Id. In the final holding of the opinion, the Court stated "that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff." Id. at 487 (emphasis added).[2]

---

2. The Sandin Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence. Furthermore, the majority in Sandin viewed administrative or protective custody as "not atypical" and within the "ordinary incidents of prison life." 515 U.S. at 484-86. Specifically, the Court stated that "Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." Id. at 486. Consequently, the appropriate

(continued...)

Even if the <u>Wolff</u> requirements were not complied with at the misconduct hearing, Brown's complaint, in light of <u>Sandin</u>, is without merit because Brown does not have a liberty interest in remaining free from disciplinary confinement and the procedural due process protections set forth in <u>Wolff</u> do not apply.  Furthermore, the incidents of disciplinary confinement in the present case are not materially different than those the Supreme Court found to be "not atypical" in <u>Sandin</u>, and they do not differ appreciably from those of administrative custody.

This Court and others within this circuit, applying <u>Sandin</u> in various actions, have found no merit in the procedural due process claims presented.  See <u>Marshall v. Shiley , et al.</u>, Civil No. 94-1858, slip op. at 7 (M.D. Pa. July 26, 1996) (McClure, J.) (holding, pursuant to <u>Sandin</u>, that where the plaintiff alleges only that he was sentenced to sixty (60) days in disciplinary segregation, under <u>Sandin</u>, he cannot assert a claim for the violation of his Fourteenth Amendment rights); <u>Muse v. Geiger, et al.</u>, Civil No. 94-0388, slip op. at 4 (M.D. Pa. September 29, 1995) (Nealon, J.) (holding, pursuant to <u>Sandin</u>, that the procedural due process claims are meritless because the punishment twice imposed was thirty (30) days in disciplinary segregation (which differs little from administrative segregation)); <u>Beckwith v. Mull</u>, Civil No. 94-1912, slip op. at 9-12 (M.D. Pa. September 27, 1995) (McClure, J.) (holding, pursuant to <u>Sandin</u>, that the procedural due process claims must fail because the punishment was twenty (20) days in disciplinary segregation); <u>Sack v. Canino</u>, 1995 WL 498709, *1 (E.D. Pa. 1995) (holding in the alternative, pursuant to <u>Sandin</u>, that the defendants deserved summary judgment on the procedural due

---

(...continued)
point of comparison is between disciplinary segregation and other forms of discretionary segregation, not general population conditions.

process claims because plaintiff's punishment was thirty (30) days in disciplinary segregation); Brown v. Stachelek, 1995 WL 435316, *3-4 (E.D. Pa. 1995) (holding, pursuant to Sandin, that plaintiff's procedural due process claims would be dismissed because plaintiff's punishment was thirty (30) days in disciplinary segregation); Colatriano vs. Williams, 1995 WL 396616, *2-3 (D. Del. 1995) (holding, pursuant to Sandin, that neither the Due Process Clause nor state law supported the plaintiff's procedural due process claims because his punishment (at most ninety (90) days in "close custody" and a loss of "minimum status") was not outside the scope of his sentence and did not otherwise violate the Constitution). Considering the rules of law set forth in Sandin, this Court finds that Brown's due process claims resulting from his placement in disciplinary segregation are meritless because he had no protected liberty interest in the first place.

Similarly, Brown's allegations that he was issued a falsified misconduct report, and that Hearing Examiner Mitchell denied a witness and the opportunity for Brown to cross examine his accuser at his hearing, did not violate his due process rights as sixty (60) days in disciplinary confinement does not constitute an "atypical and significant hardship" so as to trigger due process protection. See Sandin, 515 U.S. 472; Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997). Thus, because he was not deprived of a protected liberty interest, Brown's challenge to the issuance of the misconduct charge is only actionable under § 1983 if CO Hannah issued the misconduct in retaliation for Plaintiff having exercised a constitutional right. See Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

Moreover, the Third Circuit Court of Appeals has held that prolonged confinement in administrative custody is not cruel and unusual punishment in violation of the Eighth Amendment. Griffin, 112 F.3d at 709. An inmate placed in administrative custody pursuant to a

8

legitimate penological reason could "be required to remain there as long as that need continues." Id.

To the extent that Plaintiff claims that Defendant Lawler failed to overturn his misconduct, Brown has failed to show how Lawler was personally involved in the incident that have rise to Plaintiff's misconduct proceedings. In Rauso v. Vaughn, 2000 WL 873285 (E.D. Pa. 2000), the plaintiff's claims against a prison official were dismissed for lack of personal involvement because the Court found that the underlying claims regarding the plaintiff's misconducts lacked merit. The Rauso court held there was no evidence that the official participated in the incidents that gave rise to the misconducts, but simply upheld the decision finding that plaintiff violated prison policy. Id. at * 16; citing Bey v. Pennsylvania Dept. of Corrections, 98 F. Supp. 2d 650 (E.D. Pa. 2000) (dismissing the plaintiff's claims that the defendant superintendent was liable for upholding decisions finding that the plaintiff had violated prison policy because the underlying claim lacked merit).  Accordingly, Defendant Lawler is entitled to dismissal.

### B.    Retaliation

A prisoner alleging retaliation in violation of the Constitution must satisfy three (3) elements: (1) that he engaged in a constitutionally protected activity, Rauser, 241 F.3d at 330; (2) that he "suffered some 'adverse action' at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights", Id., 229 F.3d at 225 (quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him, Rauser, 241 F.3d at 333-34 (quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  If a plaintiff establishes a prima facie case of retaliation, the burden then

9

shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. Rauser, 241 F.3d at 334 ("Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.")

Brown argues that CO Hannah retaliated against him for exercising his First Amendment right to "free speech." Brown's retaliation claim fails the first prong, however, because he does not establish any basis to show that he had a constitutionally protected right, in the prison setting, to use inappropriate, disrespectful and derogatory language to Defendant Hannah.

Furthermore, Plaintiff did not suffer any adverse consequence as a result of the misconduct. In accepting as true all factual allegations set forth in the complaint, it is clear that Plaintiff fails to meet the second Rauser element. Plaintiff's own statements reveal that he was not deterred by any alleged adverse actions taken by Defendant Hannah because he states that he then filed a grievance, through final review, concerning Defendant Hannah's conduct. Additionally, this litigation demonstrates that he was not deterred from exercising his First Amendment Constitutional rights. Based on the foregoing, it is clear that Brown was not deterred from exercising his First Amendment rights by the alleged adverse actions of Defendant Hannah.[3]

---

[3]Defendants also argue that Plaintiff would be unable to satisfy the third element of the Rauser test because he was found guilty of the misconducts and such finding meets their burden of showing that they would have brought the misconduct charges even if Plaintiff had not exercised his First Amendment rights. (Doc. 12 at 14-15). This Court declines to address this issue based upon the finding that Plaintiff fails to meet the second element of Rauser. Further, even if Plaintiff had met the first two Rauser elements, Defendants argument on this point would be one for consideration in the context of a motion for summary judgment.

Accordingly, the Court perceives no basis upon which to permit this claim for retaliation to proceed.

### C.   Access to Courts

Indigent prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977). The right of access to the courts has been protected by Supreme Court rulings prohibiting prison officials from actively interfering with or prohibiting attempts by inmates to prepare or file court documents as well as cases requiring the waiver of various administrative fees for indigent defendants. Lewis, 518 U.S. at 350. The right of access to the courts imposes a duty on the government provide prisoners with the "means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Id. at 351 (quoting Bounds, 430 U.S. at 825).

Though not explicitly stated in Bounds, a claim based on denial of access to the court requires that the plaintiff show an injury in fact. Id. at 351-52. The prisoner plaintiff must "demonstrate that a non-frivolous legal claim had been frustrated or was being impeded," and "not ... just any type of frustrated legal claim." Id. at 353-54. Typically, the right to access the courts has applied to "direct appeals from the convictions for which [the inmate was] incarcerated ... or habeas petitions ... [and] 'civil rights actions'-i.e., actions under 42 U.S.C. Section 1983 to vindicate 'basic constitutional rights.'" Id. at 354 (citations omitted).

The Supreme Court has held that the inmate's right of access to the courts does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. Id. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Id. at 355.

Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.  Id.  The Supreme Court, in Lewis, expressly rejected the suggestion that the prisoner's right of access to the courts demands that the State "enable the prisoner to discover grievances, and to litigate effectively once in court." Id. at 354 (citing Bounds, 430 U.S. at 825-26, and n.14).

A prisoner's right of access to the courts guarantees the prisoner a "reasonably adequate opportunity" to directly or collaterally appeal a judgment or sentencing decision, file a habeas petition, and bring claims under Section 1983 alleging violation of the prisoner's constitutional rights, often related to the conditions of the prisoner's incarceration. See Lewis, 518 U.S. at 354. The actual injury component of a denial of access claim requires the plaintiff to show that the challenged conduct frustrated his ability to pursue an appeal, file a habeas petition, or assert a claim under Section 1983.  Id. at 351-53.

Here, Brown argues that "Defendants rejected [his] grievance so that [his] avenue would not be exhausted with the PLRA ruling which was impede the Defendants had not reason to reject [his] grievance nor did Defendant Lawler correct it." (Doc. 28, Brief in Opposition).  In support of this proposition, Brown submits a copy of Grievance No. 283763, filed on August 4, 2009, in which Plaintiff complains of the misconduct he received on July 24, 2009. (Doc. 29, Ex. B, Grievance No. 283763).  On August 6, 2009, this grievance was rejected due to the fact that grievances related to misconducts are reviewed through the appeals procedure provided in DC-ADM 801 and not through the grievance procedure provided by DC-ADM 804. (Doc. 29, Ex. A, Grievance Rejection Form).  Thus, it is apparent from Plaintiff's own exhibits that his grievance was rejected not as a result of Defendants' attempt to frustrate his ability to pursue the instant action in court, but simply as a result of Plaintiff's failure to follow the appropriate avenue of

relief to challenge a misconduct. Such rejection in no way impeded Plaintiff's ability to litigate this, or any other, case in court. Accordingly, Plaintiff fails to state an access to the courts claim upon which relief can be granted

### D.    Section 1983 Conspiracy Claims

To sustain a conspiracy claim under section 1983, Brown must establish that: (1) Defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Additionally, "'to [s]ufficiently allege a conspiracy, a plaintiff must show a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose'" Marchese, 110 F. Supp. 2d at 371 (quoting Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted). "'A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" Id. (quoting Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).

With regard to Brown's § 1983 conspiracy claim, there are simply no allegations in the complaint to support a plan or agreement of the Defendants to conspire or engage in a corrupt plot to violate Plaintiff's civil rights. The Court therefore rejects Brown's factual contentions as clearly baseless. See Young vs. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (finding that conspiracy claims which are based upon pro se plaintiff's subjective suspicions and unsupported speculation properly dismissed under § 1915(d)). The allegations in the complaint are vague and

13

conclusory and do not present a cognizable § 1983 conspiracy claim.  Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's § 1983 conspiracy claim.

     **E.**    **State Law Claims**

Finally, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, for this Court to simultaneously adjudicate his state law claims, a federal district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The Court, having dismissed the majority of Plaintiff's federal claims, will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3).

A separate Order will be issued.

Dated: February 6, 2012

_____
**United States District Judge**